IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

WAYNE A. SHAMMEL,                        )
                                         )
            Plaintiff,                   )   TC-MD 120838D
                                         )
      v.                                 )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
            Defendant.                   )   **DECISION**

Plaintiff appeals Defendant's denial of claimed business expenses for tax year 2009. A trial was held in the Oregon Tax Court Mediation Center, Salem, Oregon, on June 4, 2013. Gary Galbick, Certified Public Accountant, represented Plaintiff. Plaintiff testified on his own behalf. Jamie Tenace (Tenace), Auditor, appeared and testified on behalf of Defendant.

Plaintiff's Exhibits 1-4, 6, 10, 12-14, 16-17 and Defendant's Exhibits A-D were admitted without objection.

## I.  STATEMENT OF FACTS

Plaintiff testified that during tax year 2009 he owned and operated Flathead Arms and Ammunition (Flathead), a business founded by Plaintiff to manufacture ammunition and sell weapons and ammunition. (Def's Ex D at 26.) Plaintiff testified that his goal was to "replicate" the ammunition manufacturing businesses located in Montana, which were "small cottage businesses that were able to lever up" into successful companies. Plaintiff testified that, in 2009, he "traveled to Montana to look for a site to place the business," where his mother had "ten acres * * * on a trust land lease." Plaintiff testified that while he was in Montana, he "rounded up fire-proof rock and brick for the building," intending to eventually "expand * * * [his] explosives business." Plaintiff testified that he decided to open his business in Oregon. Plaintiff testified

DECISION   TC-MD 120838D                                                      1

that in preparation for his Oregon based manufacturing operation he bought "house wares, " invested in a "Factory," and purchased "Reloading Presses & Equipment," and a "20[0]9 Ranger 700xp." (Ptf's Ex 2 at 4.)

Tenace alleged that Flathead "did not even exist prior to 2010," because Plaintiff did not file an application to manufacture ammunition and sell firearms until May 1, 2010, or obtain a trademark until May 3, 2011. (Ptf's Exs 4, 6). Plaintiff agreed with Tenace that he did not file an application to "produce ammunition" and "buy and sell wholesale firearms" until 2010. Plaintiff testified that even though he had no sales in 2009 he did "research[,] development and construction," hired "Highland I Construction to build a manufacturing facility," built up an "inventory," set "up supply chain [*sic*]," and contracted with "competent local people to help out." Tenace cited *Goodwin v. Comm'r*, 75 424 (1980) *aff'd,* 691 F2d 490 (3rd Cir 1982), testifying "there's no business in active operation when there's no customers; no evidence of any sales efforts that could lead to customers." Tenace testified that "with no sales" and "without a license" to manufacture ammunition or sell firearms or "a Flathead trademark," Plaintiff did not operate a business in 2009.

Plaintiff's 2009 federal form Schedule C reported no income and total expenses of $37,289. (Ptf's Ex 2.) Plaintiff testified that he claimed and deducted expenses, including insurance, office, maintenance, supply, travel, license, tax, utilities, supply, legal and depreciation, incurred to operate Flathead for tax year 2009. (*See id*.) Plaintiff testified he "made a point to try to" always pay using credit cards to keep an electronic record of his expenses.

Defendant audited Plaintiff's 2009 tax returns on July 13, 2011. (Def's Ex C at 20.) After Plaintiff received Defendant's Notice of Deficiency dated September 29, 2011, Plaintiff

requested a conference with Defendant. Defendant requested Plaintiff substantiate his claimed deductions and set a deadline of August 15, 2012, to submit requested documentation. (*Id*. at 21.) Plaintiff failed to supply the requested documentation by Defendant's deadline and Plaintiff's return was "adjusted to disallow all business expenses claimed." (*Id* at 20.) Tenace testified that "even though Mr. Shammel had ample time to get the documents * * * to the Department of Revenue, he failed to do so * * * [and] failed to substantiate any of the expenses listed on [his] Schedule C." Defendant imposed "a 5% late payment penalty." (*Id*. at 22.)

Plaintiff filed an appeal to this court on December 13, 2012, stating that Defendant gave him insufficient time to submit documents. (Ptf's Compl at 1.) Plaintiff testified that a restraining order denied him access to his home, where his documents were stored, and prevented him from submitting documents in a timely manner. Plaintiff briefly referenced *Murray v. Comm'r* (*Murray*), 41 TCM (CCH) 337 (1980) (holding an eviction qualifies as a circumstance beyond a taxpayers control which excuses failure to meet a deadline). Plaintiff testified his restraining order was a circumstance beyond his control, similar to eviction in *Murray*, that excused his failure to meet the deadline.

Tenace testified that Plaintiff's "new" evidence submitted for trial should not be considered because it was not provided by Defendant's deadline. Tenace cited *Gizzi v. Comm'r*, 65 TC 342 (1975), stating "[m]arital difficulties and their consequences, no matter how seemingly independent of petitioner's will, do not sufficiently resemble floods or fire to be considered a casualty." *Gizzi*, 65 TC at 345. Plaintiff testified that after he consulted a certified public accountant, he identified business expenses, and the certified public accountant prepared a "general ledger" listing those identified expenses as allowable Flathead business deductions.

/ / /

## II.  ANALYSIS

Plaintiff requests that claimed business expense deductions for the 2009 operation of Flathead in the amount of $37,289 be allowed and that the five percent late penalty imposed by Defendant be waived.  (Ptf's Compl at 1.)  Defendant alleges (1) that Plaintiff cannot submit "new" evidence at trial other than what was submitted to Defendant during its audit; (2) that Flathead was not an operating business in 2009; and (3) that Plaintiff failed to prove his expenses are allowable business deductions.

A.      *Evidence submitted for trial*

"All proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried * * * *de novo*."  ORS 305.425(1)[1] (emphasis added).  "When an issue is litigated before us on *de novo* review, we are bound to reach the correct result without regard for either party's prelitigation position."  *Reed v. Dept. of Rev*. (*Reed*), 310 Or 260, 268, 798 P2d 235 (1990) (emphasis added).

When, as in this case, the dispute moves to the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence.  ORS 305.427.  The burden in this case falls, at least initially, on the Plaintiff, as he is the party seeking affirmative relief.  This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence."  *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).  Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof.  *Reed*, 310 Or at 265. Finally, in an income tax appeal, this court has the statutory authority to determine the correct amount of the deficiency "even if the amount so determined is greater or less than the amount of the assessment determined by the

---

[1]  All references to the Oregon Revised Statutes (ORS) and the Internal Revenue Code (IRC) are to the 2009 versions.

Department of Revenue[.]" ORS 305.575.

In making its determination, the court considers the testimony and evidence presented at trial. The court is not limited to the evidence that a taxpayer presented during an audit by the Oregon Department of Revenue (Department). Defendant's assertion that Plaintiff can only present evidence previously exchanged during the Department's audit is without merit when the matter is "tried * * * de novo." ORS 305.425(1).

B.      *Allowance of business deductions*

ORS 316.007(1) states, in part, that Oregon's policy for income tax law is "identical in effect to the Internal Revenue Code." The legislature intended that the Department of Revenue "shall apply and follow the administrative and judicial interpretations of the federal income tax law," regarding the allowance of deductions and evidence needed for deductions to be substantiated. ORS 316.032(2).

"The Oregon Legislature intended to make Oregon personal income tax law identical to the [IRC] for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon Law." *Ellison v. Dept. of Rev.,* TC-MD No 041142D, WL 2414746 at *6 (Sept. 23, 2005) (citing ORS 316.007(1)). By reference, the legislature adopted federal deductions, including those allowed under IRC section 162(a). (*See* ORS 316.007.) That section states in part that a taxpayer can deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC § 162(a). "Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that she is entitled to any deduction she claims" by showing deductions are "ordinary" and "necessary." *Bennett v. Comm'r*, 99 TCM (CCH) 1469 (2010).

Flathead must qualify as a trade or business in 2009 to be eligible to deduct qualifying

business expenses. *See generally* IRC § 167(a). Flathead must satisfy two criteria to qualify as a business in 2009. The first requirement is that Flathead's owner (Plaintiff) must have a "profit motive," which is the good faith intention of a taxpayer to generate a profit and a belief that his actions will lead to profit. *Doggett v. Comm'r*, 65 F2d 191, 194, (DC Cir 1933). A business may exist even if there are no profits in the initial years, provided that there is "profit potential." *Sabelis v. Comm'r* (*Sabelis*), 37 TC 1058, 1062 (1962). Plaintiff must have a specific plan to achieve profit, which may be sufficient even if that plan is unreasonable. *See Sutherland v. Comm'r*, 27 TCM (CCH) 103 (1968). ("[A]n ephemeral, undefined hope, unrelated to any semblance of a substantive plan of achievement [will not suffice].")

Plaintiff testified that, during 2009, he conducted research and development, including looking for a site to build a manufacturing facility and making business connections. Plaintiff testified his goal was to "replicate" the successful ammunition manufacturing businesses in Montana, which he testified were "small cottage businesses that were able [to] lever up." Plaintiff's testimony and business plan show Plaintiff had a desire to make a profit and a plan to do so. (*See* Def's Ex D at 26-34.) As in *Sabelis*, there was no actual profit, but Plaintiff had a good faith belief that there was "profit potential." *Sabelis*, 37 TC at 1062.

The second requirement is Flathead must be "involved in the activity with continuity and regularity" to be a trade or business. S*ee Ferguson v. Comm'r*, 2007 WL 610059 (Feb 28, 2007.) (Citations omitted). "[I]t is well established that in order for an activity to be considered a trade or business for the purposes of section 162, the activity must be conducted with continuity and regularity." (Internal quotations omitted). A recent United States Tax Court case, *Heinbockel v. Comm'r* (*Heinbockel*), 105 TCM (CCH) 1733 (2013), discussed "continuity and regularity" in the context of allowable business deductions for a functioning trade or business. *Heinbockel*

found that:

> "In order for the expenses to be deductible under * * * section [162], however, the expenses must relate to a trade or business functioning when the expenses were incurred. A taxpayer has not engaged in carrying on any trade or business within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized. Carrying on a trade or business requires a showing of more than initial research into or investigation of business potential. The business operations must have actually began. Until the time the business is performing the activities for which it was organized, expenses related to that activity are not currently deductible under section 162. They are instead classified as startup or pre-opening expenses. And startup expenses—which include those incurred before the day on which the active trade or business begins—are only deductible over time once an active trade or business begins.[2]

*Heinbockel*, 105 TCM (CCH) 1733 (citations omitted) (internal quotations omitted).

The time a business is "performing the activities for which it was organized" can be delayed until licensing requirements are met. *Id*. (Citations omitted.) For businesses requiring a federal license to operate, the controlling precedent is *Richmond Television Corp. v. United States* (*Richmond*), 345 F2d 901 (4th Cir 1965), *vacated and remanded on other grounds*, 382 US 68 (1965). *Richmond* held that for a business requiring a federal license to operate, expenses incurred during the time the business did not have a valid federal license were properly labeled "pre-operating expenses" and were not allowable deductions under IRC section 162:

/ / /

> "[A]s a matter of law * * * Richmond Television was not in business until

---

[2] Expenses may be deductable as start-up expenditures under IRC section 195. Start-up expenditures are:
  (1) * * * any amount—
    (A) paid or incurred in connection with—
      (i) investigating the creation or acquisition of an active trade or business, or
      (ii) creating an active trade or business, or
      (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and
    (B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

> 1956, when it obtained the license and began broadcasting. Until then there was no certainty that it would obtain a license, or that it would ever go on the air. Since all of the expenditures underlying the disputed deductions were made before the license was issued and broadcasting commenced, they are 'pre-operating expenses,' not deductible under section 162(a)."

*Richmond* 382 US 68 at 907. It is clear from the holdings in *Heinbockel* and *Richmond* that expenses incurred by Plaintiff are not deductible as business expenses in a tax year before a Plaintiff received the required federal license to operate his business.

Plaintiff admitted that Flathead was not licensed by the federal government to manufacture ammunition and sell ammunition and weapons until 2010. Flathead was not an operating business in 2009 and none of its expenses are allowable as IRC section 162 business deductions in 2009.

## C. Penalties

Plaintiff requested the "5% late payment penalty" imposed be removed. (Def's Ex C at 22.); *see also* ORS 314.400(1). "[ORS 314.400(1)] is mandatory and requires that penalties be imposed if returns are late." *Pelett v. Dept. of Rev.* (*Pelett*), 11 OTR 364, 365 (1990). Defendant may waive the penalty if a taxpayer presents evidence that shows "[g]ood and sufficient cause exists for the actions of a taxpayer that resulted in the imposition of a penalty[.]" ORS 305.145(4)(a). The power to waive the penalty is discretionary and given to Defendant. *Pelett,* 11 OTR at 365. This court has the authority to review whether a taxpayer is subject to a penalty, but not whether Defendant should have waived that penalty. *Id.* Plaintiff's request to the court was to waive the penalty, not review it. The court has no authority to waive the penalty.

/ / /

/ / /

/ / /

## III. CONCLUSION

DECISION   TC-MD 120838D                                                                                          8

After careful review of the testimony and evidence, the court concludes that Plaintiff has not substantiated that Flathead's expenses meet the statutory requirement as qualifying business expenses for tax year 2009. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of claimed business expenses for tax year 2009 is denied.

IT IS FURTHER DECIDED that Plaintiff's appeal of the late payment penalty imposed by Defendant is denied.

Dated this ____ day of July 2013.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on July 31, 2013. The court filed and entered this Decision on July 31, 2013.*